IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00982-PAB

CHRIS ALLEN JOMPP,

    Petitioner,

v.

WARDEN OF STERLING PRISON, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

    A Colorado jury found petitioner Chris Allen Jompp guilty of robbery, third-degree assault, and escape. The trial court adjudicated petitioner a habitual criminal and imposed sentences totaling 32 years. Petitioner brings this habeas corpus action under 28 U.S.C. § 2254 to challenge the convictions and sentences. What remains for review are the merits of Claims 1 and 5, along with their subparts. Petitioner argues that his constitutional right to a speedy trial was violated, that sufficient evidence did not support his conviction for robbery, that his right to a jury was violated when the trial judge (not a jury) adjudicated him a habitual offender, and that the trial court erred in instructing the jury. After reviewing the application, the answer, and the state-court record, no basis for habeas relief has been shown. The Court therefore rejects each of petitioner's claims on the merits and denies the habeas application.

## I. STANDARDS OF REVIEW

"The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a prisoner who challenges (in a federal habeas court) a matter 'adjudicated on the merits in State court' to show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (citing 28 U.S.C. § 2254(d)(1) and (2)). Petitioner's remaining claims were adjudicated on the merits in state court. As such, it is well-settled that "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion[,] a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Petitioner bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

Because petitioner is *pro se*, the Court liberally construes his filings, but will not act as an advocate. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## II. BACKGROUND

### A. State Court Proceedings.

On direct appeal, the Colorado Court of Appeals (CCA) recounted the events leading to petitioner's convictions as follows:

2

Jompp, the victim, and an acquaintance, B.B., were driving around one evening in a stolen car while high on methamphetamine. During the night they stopped at two apartments to use more methamphetamine. Another acquaintance, C.P., who was also high, left with the group from the second apartment. The four continued to drive around town, with the victim driving, Jompp in the passenger seat, and B.B. and C.P. sitting in the back. Tension arose between the victim and Jompp. The victim had propositioned B.B. and C.P. numerous times for sex in return for money and drugs, and Jompp asked him to stop.

Eventually the victim parked the car near one of the apartments they had visited earlier. What happened next isn't clear, but by all accounts, a fight broke out between Jompp and the victim. When the fight ended, the victim fell out of the driver's side door unconscious.

C.P. recalled that B.B. then got out of the car and hit and kicked the victim while he was on the ground. B.B. said, however, that she remained in the car and saw C.P. go over to the victim. C.P. admitted that at some point after the victim was unconscious on the ground, at Jompp's direction, she went through the victim's pockets, took money from him, and gave it to Jompp. B.B. also took the victim's cell phone from the backseat.

Jompp, B.B., and C.P. left the victim on the ground and dropped the car off in an alley. Around four o'clock that morning a security guard noticed the victim still on the ground and called the police. An ambulance took him to the emergency room where he was diagnosed with multiple serious head injuries.

The police traced the victim's cell phone to B.B., who identified Jompp as the victim's assailant. Days after the victim was injured, the police found Jompp and C.P. The police ordered Jompp to the ground, handcuffed him, and searched him. One officer led Jompp to a police car to take him to jail. As the officer was about to place Jompp in the police car's back seat, Jompp took off running. After a short chase, the police caught Jompp and he was taken to jail.

The victim died approximately one month later from the injuries he sustained in the fight.

The People charged Jompp with second degree murder, second degree assault, robbery, escape, and several habitual criminal counts. At trial, Jompp's defense theories were that B.B. killed the victim and that the prosecution otherwise failed to prove the charges. The jury convicted Jompp of third degree assault, robbery, and escape. The trial court adjudicated Jompp an habitual criminal [footnote omitted] and sentenced him to forty-eight years in prison.

Docket No. 13-1 at 2-4. The CCA affirmed each conviction, but remanded for resentencing on the escape conviction.[1]  *Id.* at 21.

### B.  Federal Habeas Proceedings.

After the direct appeal proceedings in state court, petitioner commenced this habeas action under § 2254 on April 7, 2020. Docket No. 1. The habeas application presented 5 claims. *See id.* On initial review, and based on the Recommendation of Magistrate Judge Gordon P. Gallagher, the action was dismissed without prejudice as a mixed petition on December 3, 2020 because it presented both exhausted and unexhausted claims. Docket Nos. 17, 18, 19. Specifically, Claims 1 and 5 were found to be at least partially exhausted; Claims 2 and 3 were procedurally defaulted; and Claim 4 was unexhausted, but not procedurally defaulted. *See* Docket No. 17.

On December 21, 2020, petitioner filed a "Petition for Rehearing," asserting that he never received the Recommendation, and requested an opportunity "to reply to the Recommendation." Docket No. 24 at 2-3. Contrary to the Recommendation, petitioner argued that Claims 2 and 3 were not procedurally defaulted. *Id.* However, petitioner conceded Claim 4 was unexhausted and pending in state court. Petitioner stated, in the alternative, that if the Court still found Claims 2 and 3 procedurally defaulted, he "agree[d] to the dismissal of Claims 2, 3, and 4 of this action[, requesting that] Claims 1 and 5 remain in the interests of justice." (*Id.* at 4). Based on this filing, the case was

---

[1] On remand, the trial court imposed sentences totaling 32 years: 8 years for the escape conviction to be served consecutively to a 24-year sentence for the robbery conviction. The CCA affirmed the sentences imposed after remand. Docket No. 39-1. The length of petitioner's sentences are not at issue in this case.

reopened on December 28, 2020, and petitioner's arguments regarding the claimed errors in the Recommendation were considered. Docket No. 28.

Claims 2 and 3 were still found procedurally defaulted and Claim 4 still unexhausted. Accordingly, Claims 2, 3, and 4 were dismissed as petitioner requested and respondents were ordered to answer the merits of Claims 1 and 5. Docket Nos. 25, 26, and 27. After initial review was completed, the matter was drawn to this Court for further proceedings. Docket No. 30.

On June 10, 2021, respondents answered Claims 1 and 5, arguing that § 2254 bars habeas relief. Docket No. 39. On June 23, 2021, petitioner filed an interlocutory appeal with the United States Court of Appeals for the Tenth Circuit. Docket No. 40. The Tenth Circuit dismissed petitioner's appeal and issued its mandate on September 15, 2021. Docket Nos. 48, 49. Despite filing an appeal and various other requests with the Court, petitioner has not submitted a reply to address respondents' arguments, and the time to do so has passed. Docket No. 26 at 1. The Court will now address the merits of petitioner's remaining claims.

### III.   DISCUSSION

#### A.   Speedy Trial.

Petitioner first argues that the 13-month delay between the time of his arrest and trial violated the Sixth Amendment right to a speedy trial. Docket No. 1 at 4-15. Respondents answer that § 2254(d)(1) bars the claim because the CCA's decision was not contrary to, or an unreasonable application of, *Barker v. Wingo*, 407 U.S. 514 (1972). Docket No. 39 at 13-15. And relief under § 2254(d)(2) is unavailable because petitioner does not argue that the CCA rejected the claim based on an unreasonable

determination of the facts. *Id.* The Court agrees with respondents.[2] The Court will recount why the CCA rejected the claim, and then address whether § 2254 provides any basis for habeas relief.

   1. *CCA's resolution.*

Because petitioner "didn't preserve his constitutional speedy trial claims," the CCA reviewed the unpreserved claim for plain error. Docket No. 13-1 at 6. The CCA first discussed additional facts relevant to the speedy trial analysis and then concluded that the trial court did not plainly err:

> Jompp was arrested on October 31, 2013. On March 14, 2014, he entered a not guilty plea and jury trial was set for August 25, 2014.
>
> Over the following months, the prosecution sought to secure B.B.'s attendance at trial. The prosecution knew B.B. lived in Utah and in April 2014 asked the trial court to issue a certificate to summon her from outside the state under section 16-9-203, C.R.S. 2017, which the court granted [footnote citing to Colo. Rev. Stat. § 16-9-203 omitted]. After trying unsuccessfully to serve B.B. the summons, the prosecution learned that she may have been living at a different address in Utah, and in June the court issued a second certificate to summon. In August the prosecution requested a third certificate to summon, and the court issued it with a recommendation that B.B. be taken into custody to assure her presence at trial.
>
> On August 18, 2014, the prosecution filed a motion to continue the trial if B.B. was still unavailable. At the motion hearing, the prosecutor provided additional information on his efforts to locate and serve B.B. Specifically, the prosecutor explained that he had three people from the police department working with local Utah agencies. And, investigators had

---

[2] Respondents also renew their argument that this claim was not properly exhausted, based on the CCA's plain error review, and thus procedurally barred from habeas review. Docket No. 39 at 9-13. On initial review, Senior District Judge Lewis T. Babcock rejected the state's procedural argument. *See* Docket No. 25 at 4-7. Because this Court finds that petitioner's speedy trial claim should be denied on the merits, it will not revisit the procedural issue. *Milton v. Miller*, 812 F.3d 1252, 1265 (10th Cir. 2016) (citing 28 U.S.C. § 2254(b)(2)) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

6

contacted B.B. via Facebook and believed they could trace her cell phone, which they guessed would probably take two to three weeks. The investigators had also been following her on another Facebook account she used under a different name. The prosecutor also said that B.B.'s biological son and the son's adoptive parents were cooperating and were still in touch with B.B. The investigators were also tracking B.B.'s husband who had just been released from jail and was thought to be with B.B.

The prosecutor also said there was a $25,000 outstanding warrant in Utah, they were "close to getting her," and that "leads . . . on her address in the past two weeks looked very promising," but that she was "something of a couch surfer." It concluded that "there's reasonable grounds to believe that we will have her in the not too distant future." The court granted the motion and set Jompp's trial date for December 1, 2014.

Not long after, B.B. was arrested in Utah based on the certificate to summon and appeared in court in Colorado on September 11, 2014. She testified at trial.

\*          \*          \*          \*          \*

A defendant has a constitutional speedy trial right under the United States Constitution's Sixth Amendment and article II, section 16 of the Colorado Constitution. *Small*, 631 P.2d at 154. "The analysis of whether the constitutional right was violated differs from the analysis of whether the statutory right was violated." *People v. Nelson*, 2014 COA 165, ¶ 21. Under both the Federal and State Constitutions, "the right to a speedy trial attaches with the filing of a formal charge or with a defendant's arrest." *People v. Glaser*, 250 P.3d 632, 635 (Colo. App. 2010) (citing *United States v. Marion*, 404 U.S. 307, 320 (1971), and *People v. Chavez*, 779 P.2d 375, 376 (Colo. 1989)). Under both provisions, compliance is determined by considering four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the delay. *Barker*, 407 U.S. at 530; *Chavez*, 779 P.2d at 376. A defendant bears the burden of showing that his constitutional right to a speedy trial was violated. *Valles*, ¶ 45.

Under the four *Barker* factors, we conclude that the trial court didn't plainly err by granting the prosecution's requested continuance.

First, the length of the delay was thirteen months. A delay over a year is presumptively prejudicial. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). "This delay, however, was by no means extreme." *Nelson*, ¶ 33 (discussing delay just short of fourteen months); *see also People v. Fears*, 962 P.2d 272, 279 (Colo. App. 1997) (the defendant's constitutional right wasn't violated by three-year delay between charge

7

and trial). Still, Jompp was incarcerated during this time. So this factor weighs in his favor.

Second, while the delay is attributable to the prosecution, the delay was justified. *See Barker*, 407 U.S. at 531 ("Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."). So this factor favors the prosecution.

Third, while Jompp asserted his right to a speedy trial, he "did not expand upon that argument" at any time. *Valles*, ¶ 49. This factor may slightly favor Jompp because he generally asserted his right.

Fourth, Jompp asserts he was prejudiced by "oppressive pretrial incarceration" because he was incarcerated from arrest until trial. The Supreme Court in *Barker* identified three interests of a defendant to consider in assessing prejudice: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility the defense will be impaired. 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Jompp doesn't describe how his incarceration was oppressive or unjustified and doesn't establish any prejudice to his defense from his incarceration. *See Nelson*, ¶ 41 ("[H]e presented no evidence or offer of proof to establish any such anxiety or concern beyond that normally to be expected from the fact of a criminal prosecution. And he did not allege, much less establish, any prejudice to the defense resulting from the delay."); *People v. Fennell*, 32 P.3d 1092, 1095 (Colo. App. 2000) ("[S]ignificantly, defendant has not asserted any specific prejudice resulting from the delays. In this context, the fact that defendant was incarcerated is given slight weight absent a showing that his ability to present a defense was impaired."). So this factor favors the People.

Having reviewed the four factors, we conclude the trial court didn't plainly err because Jompp's constitutional right to a speedy trial wasn't obviously violated.

Docket No. 13-1 at 7-9; 12-15.

   2.  *Application of § 2254.*

The Sixth Amendment provides that a defendant in a criminal case has a right to a speedy trial. The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first. *United States v. Marion,* 404

U.S. 307, 320-21 (1971).  The Supreme Court has adopted a four-part balancing test to determine whether a constitutional speedy trial violation has occurred.  *See Barker v. Wingo*, 407 U.S. 514 (1972).  The four factors are: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his speedy trial rights, and (4) the prejudice to the defendant as a result of the delay.  *See id.* at 530.  No single factor is determinative; all four factors are related "and must be considered together with such other circumstances as may be relevant."  *Id*. at 533.  A delay that exceeds one year is sufficient to trigger the speedy trial analysis.  *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

The CCA decided this claim by weighing the factors set forth in *Barker*, and did so in a reasonable manner.  That the court found those factors weighed against petitioner is not grounds for habeas relief.  Petitioner does not argue that the CCA's decision contradicts a pertinent Supreme Court holding.  Nor does petitioner argue that the CCA's decision was based on an unreasonable determination of the facts in light of the evidence presented.  As such, habeas relief will be denied.

**B.     Sufficiency of Evidence.**

Petitioner's next claim is that the prosecution did not present sufficient evidence for the jury to find him guilty beyond a reasonable doubt of robbery.  Docket No. 1 at 26-31.  Respondents contend that AEDPA bars relief because the CCA's denial of the claim was not contrary to, or an unreasonable application of, binding Supreme Court precedent.  Docket No. 39 at 15-19.  Likewise, habeas relief is unavailable under § 224(d)(2) because the CCA's factual determinations are supported by the record.  *Id.* at 18-19.  The Court will recount why the CCA denied the claim and then address

whether § 2254 provides any basis for habeas relief.

   1. *CCA's denial of the claim.*

The CCA concluded that sufficient evidence was presented for the jury to find Petitioner guilty of robbery beyond a reasonable doubt. The CCA's explained its decision as follows:

> Jompp contends that the prosecution "presented insufficient evidence" that he committed robbery, as either a principal or accomplice, because it (1) failed to show that he "applied physical violence against [the victim] during the course of an unlawful taking of property from his person or presence"; and (2) "presented nothing more than speculation . . . that [the theft] was even conceived, much less started, until after the assault." We disagree.
>
>                A. Standard of Review and Governing Law
> We review the evidence's sufficiency de novo. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). We must determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Clark v. People*, 232 P.3d 1287, 1291(Colo. 2010). We give the prosecution the benefit of every reasonable inference that can fairly be drawn from the evidence, so long as any inference is supported by a convincing logical connection between the facts established and the conclusion inferred. *People v. Perez*, 2016 CO 12, ¶ 25; *People v. Villalobos*, 159 P.3d 624, 627 (Colo. App. 2006) ("[W]here reasonable minds could differ, the evidence is sufficient to sustain a conviction.").
>
> A person commits robbery if he "knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation." § 18-4-301(1), C.R.S. 2017. "The gravamen of robbery is the application of physical force or intimidation against the victim at any time during the course of a transaction culminating in the taking of property from the victim's person or presence." *People v. Bartowsheski*, 661 P.2d 235, 244 (Colo. 1983). "There is no requirement that the application of force or intimidation must be virtually contemporaneous with the taking." *Id.* at 244-45.
>
> In *Bartowsheski*, the supreme court held that the evidence was sufficient to support a conviction for robbery where the defendant entered a house to steal guns; killed a child who was awakened and had gotten into his path; and, at some point after the attack, took guns from the house. *Id.* at

>     243-45.
>
>                                       B. Analysis
>     The record contains sufficient evidence to support the jury's conclusion
>     beyond a reasonable doubt that Jompp robbed the victim.
>
>     B.B. said that while the group was parked in the car, Jompp suddenly
>     attacked the victim. After Jompp and the victim exchanged blows, the
>     victim fell out of the car and onto the ground. B.B. said she then saw C.P.
>     get out of the car, go over to the victim, and start digging through his
>     pockets. C.P. then got back in the car and the group left the scene. And
>     C.P. admitted that she went through the victim's pockets to get money at
>     Jompp's direction and she gave him the money she found. But she was
>     unsure whether she took the money after the fight or later when she went
>     back to check on the victim.
>
>     We acknowledge that other evidence may support the contrary conclusion
>     that the assault resulted solely from the argument between Jompp and the
>     victim and wasn't part of "the course of a transaction culminating in the
>     taking of property from the victim." But as to such factual determinations,
>     "[w]e do not sit as a thirteenth juror to determine the weight of the
>     evidence presented to the jury." *Clark*, 232 P.3d at 1293.
>
>     We also reject Jompp's argument that the prosecution had to show that
>     the force he used against the victim was "calculated to take [the victim's]
>     money." Robbery isn't a specific intent crime, so it doesn't require proof of
>     intent to permanently deprive another person of the use or benefit of a
>     thing of value. *People v. Moseley*, 193 Colo. 256, 262, 566 P.2d 331, 335
>     (1977). And under *Bartowsheski*'s "course of the transaction" doctrine,
>     Jompp's use of force against the victim during the course of a transaction
>     in which C.P., as his accomplice [footnote 4 omitted], took the victim's
>     money was sufficient to constitute a robbery. *See Bartowsheski*, 661 P.2d
>     at 244; *People v. Buell*, 2017 COA 148, ¶ 26 (evidence necessarily
>     sufficient to support aggravated and attempted aggravated robbery
>     convictions where the defendant committed theft and used a knife to avoid
>     apprehension) (*cert. granted* Apr. 23, 2018). Whether Jompp told C.P. to
>     take the money before, after, or contemporaneous with the assault, his
>     use of force against the victim made it possible for C.P. to take the money
>     without resistance. *See People v. Davis*, 935 P.2d 79, 85 (Colo. App.
>     1996) ("Thus, the [*Bartowsheski*] court essentially set out a 'but for' test —
>     but for the force, the victim would have kept the property, irrespective of
>     how the force was used.").

Docket No. 13-1 at 15-19.

### 2. Application of § 2254.

The federal standard for evaluating a claim challenging the sufficiency of evidence is found in *Jackson v. Virginia*, 443 U.S. 307 (1979).  In *Jackson*, the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*  "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 324, n.16).  To the extent an insufficient evidence claim involves an interpretation of state law, the state court's interpretation "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).

"Sufficiency of the evidence is a mixed question of law and fact." *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006).  The Court must apply both § 2254(d)(1) and (d)(2) and "ask whether the facts are correct and whether the law was properly applied to the facts." *Id.*  The Court is "required to defer to any determination of factual issue by the state court due to the presumption of correctness afforded by § 2254(e)," unless petitioner overcomes that presumption with "clear and convincing evidence." *Id.*

"*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman*, 566 U.S. at 651.  "First, on direct

appeal, it is the responsibility of the jury – not the [state] court – to decide what conclusions should be drawn from the evidence admitted at trial." *Id.* (internal quotation marks omitted). Second, "on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Id.* (internal quotation marks omitted).

The CCA applied *Jackson* in an objectively reasonable manner when it rejected petitioner's sufficiency-of-the-evidence claim. The CCA's summary of the evidence is supported by the state-court record. (ECF No. 51, December 8, 2014, Trial Tr. at 88-96, 98-100, 230-241, 256-258). When viewing the evidence as a whole, and in the light most favorable to the prosecution, the CCA reasonably concluded that a rational jury could have found petitioner guilty beyond a reasonable doubt of robbery.

Petitioner argues that C.P.'s trial testimony expressed some uncertainty as to precisely when petitioner directed C.P. to go through the victim's pockets and give petitioner the money. Specifically, C.P. was unsure whether she took the money immediately after the fight, or later when she went back to check on the victim. Based on this testimony, petitioner concludes that he did not take the victim's property in a sufficiently close temporal proximity to when force was applied to constitute the crime of robbery. But as the CCA explained, Colorado follows the "course of transaction" doctrine—essentially a "but for" test—which does not require the application of force or intimidation to "be virtually contemporaneous with the taking." Docket No. 13-1 at 16-19. This Court is bound to accept Colorado's own interpretation of its criminal robbery

13

law. *Bradshaw*, 546 U.S. at 76.  And to the extent petitioner contends that C.P.'s testimony conflicted, it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, the state-court factual findings are presumed correct.  Petitioner submits nothing—and certainly not clear and convincing evidence—to rebut the presumption of correctness.  *See* 28 U.S.C. § 2254(e).

The Court therefore finds that under §§ 2254(d)(1) and (d)(2) the CCA correctly determined the facts and reasonably applied those facts to the state's robbery law. Thus, petitioner's sufficiency-of-the-evidence claim will be denied.

### C. Habitual Offender Adjudication and Jury Instruction.

Finally, petitioner argues that his Sixth Amendment right to a jury trial was violated because a judge, not a jury, determined whether his prior convictions had been sufficiently proven under Colorado's habitual offender sentencing statute—a statue that triggers enhanced penalties once the prior convictions have been proven.  Docket No. 1 at 24-25.  But, as the CCA correctly found and respondents correctly argue, there is no federal right to have a jury determine the fact of a prior conviction.  "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added).  Because there is no federal constitutional right to have a jury determine the fact of a prior conviction, habeas relief will be denied.

Though not clear, petitioner may argue, as a subpart of this claim, that the trial court erred by not instructing the jury on a lesser nonincluded offense to the escape

14

charge. Docket No. 1 at 21-37. At trial, defense counsel tendered a resisting arrest jury instruction and argued that "whether [petitioner] was under arrest or was in the process of being arrested when he ran away was a factual question for the jury to decide." Docket No. 13-1 at 22. The CCA rejected the claim because, as a matter of Colorado law, the undisputed record established that petitioner was "in custody" at the time he ran from the officer who had handcuffed him and led him to the police car. *Id.* at 22-23. The claim fails for at least two reasons.

First, the issue was presented to, and rejected by, the CCA as a matter of state law. Through its interpretation of Colorado's escape statute, the CCA concluded that petitioner was "in custody" at the time he ran from his arresting officer because petitioner "had already submitted to the police officer's instructions, was handcuffed, searched, and led by the arm to a patrol car for transport to jail." Docket No. 13-1 at 22-23 (citing Colo. Rev. Stat. § 18-8-208(3)). Simply put, because petitioner was under arrest at the time he ran, the trial court did not err in refusing to give the proffered resisting arrest instruction. The resolution of this claim thus turned on a matter of Colorado criminal law.

Yet "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Decisions that rest on matters of state law—including a state court's reading of its own criminal law—are binding on a federal court. *Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002). Consequently, petitioner claims no more than an error of state law, which does

not provide grounds for federal habeas relief.

Second, petitioner fails to demonstrate any way the state court's decision was contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1). Nor does petitioner argue that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief is therefore not warranted under §§ 2254(d)(1) or (2).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 1] is DENIED and this case is DISMISSED WITH PREJUDICE. It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c) because petitioner has not made a substantial showing of the denial of a constitutional right.

DATED December 23, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge